**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DONZELLE CROSBY, | ) | CASE NO.   1:19-CV-00141 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| CHRISTOPHER LAROSE, | ) | |
| Warden, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Respondent. | | |

 

Petitioner Donzelle Crosby ("Petitioner" or "Crosby") challenges the constitutionality of his conviction in the case of *State of Ohio v. Crosby*, Lorain County Court of Common Pleas Case No. 11CR082579. (R. 1, PageID # 1). Petitioner, *pro se*, filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Respondent, Warden Christopher LaRose ("Respondent") has filed an Answer/Return of Writ. (R. 10). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DISMISSED as time-barred.

I.      **Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. §

2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court

factual findings are presumed correct unless rebutted by clear and convincing evidence.") The

Ninth District Court of Appeals ("state appellate court") summarized the facts underlying

Petitioner's conviction as follows:

> According to Michelle Neal, she used to allow Mr. Crosby to sell drugs out of her
> house in Lorain. On March 1, 2011, Mr. Crosby came to the house with a couple
> of other men. Ms. Neal told them that they could not stay, however, because she
> had company. About 45 minutes later, the men came back to the house, alleging
> that one of them had lost a cell phone inside it. After Ms. Neal's boyfriend let them
> enter, Mr. Crosby walked over to Ms. Neal's bedroom, which was on the main
> floor. Inside the bedroom, Jason Smith was playing cards with James Woods. He
> also had been selling drugs to the other people in the house. Ms. Neal testified that,
> when Mr. Crosby reached the bedroom, he told Mr. Smith to "give me all your
> shit[.]" When Mr. Smith refused, Mr. Crosby shot him, then fled out the front door
> with the men who accompanied him. Mr. Smith chased after Mr. Crosby, but
> collapsed on the driveway outside the house. Ms. Neal called 911 and stayed with
> Mr. Smith until an ambulance arrived. Mr. Smith, nevertheless, died from his
> wounds.

(R. 10-1, Ex. 15; *State v. Crosby*, No.15CA010724, 2015-Ohio-5176, ¶2-3 (Ohio Ct. App. Dec.

14, 2015).[1]

---

[1] All referenced exhibits are located at R. 10-1, unless otherwise stated.

## II.      Procedural History

### A.      Conviction

On May 12, 2011, a Lorain County Grand Jury issued an indictment charging Crosby with aggravated murder in violation of Ohio Rev. Code § 2903.01(B) with a death penalty specification; two counts of murder in violation of Ohio Rev. Code § 2903.03(A) and (B); two counts of aggravated robbery in violation of Ohio Rev. Code § 2911.01(A)(1) and (A)(3); aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(1); two counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(1) and (A)(2) and tampering with evidence in violation of Ohio Rev. Code § 2921.12(A)(1). (Ex. 1). Each offense, except tampering with evidence, included a firearm specification. *Id.* Crosby pled not guilty to the charges. (Ex. 2).

On November 13, 2014, the trial court dismissed the death penalty specification. (Ex. 8). The matter proceeded to a jury trial on November 17, 2014. (R. 10-2, PageID# 440). The jury found Crosby guilty of the offenses and firearm specifications. (Ex. 10). On December 11, 2014, Crosby was sentenced to an aggregate prison term of 33 years to life. (Ex. 11).

### B.      Direct Appeal

On January 6, 2015, Petitioner, through counsel, appealed his convictions to the state appellate court. (Ex. 12). Petitioner raised the following assignments of error:

1. Appellant's convictions for Aggravated Murder, Murder, Aggravated Robbery, Felonious Assault and Tampering with Evidence was against the manifest weight of the evidence.

2. The State of Ohio did not present sufficient evidence of Aggravated Murder, Murder, Aggravated Robbery, Felonious Assault and Tampering with Evidence to convict the Appellant.

3. Trial counsel was Ineffective for failing to object to testimony on a compounding level that included failures to object to Bruton testimony & hearsay testimony.

4. The trial court abused its discretion, and/or counsel was ineffective, when it learned of Crosby's 52 IQ, and did not order a new Competency [examination] based on this information.

(Ex. 12 & 13, PageID# 131). On December 14, 2015, the state appellate court affirmed the trial court's judgment. (Ex. 15, *Crosby*, 2015-Ohio-5176). Crosby did not appeal to the Ohio Supreme Court.

### C. Postconviction Relief

On March 16, 2016, Crosby, with the assistance of appellate counsel, filed a motion for post-conviction relief, requesting an evidentiary hearing. (Ex. 16). Crosby raised the following claims:

1. Attorney Jack Bradley committed ineffective assistance of counsel when he terminated representation with Petitioner [Crosby], a current client, to represent Jeremy Brown, a codefendant (Never Represented by Attorney Bradley) in this aggravated murder prosecution. Jeremy Brown was one of the primary evidentiary witnesses against the petitioner.

2. Trial Counsel was ineffective when it failed to raise the issues of a conflict of interest when faced with Jeremy Brown testifying against the Petitioner.

3. The State of Ohio denied the Petitioner due process, or alternatively committed prosecutorial misconduct when it allowed Brown to testify against the Petitioner knowing that conflicts of interest were present when developing the plea agreement with Jeremy Brown & Petitioner.

4

4.      The Trial Court denied the Appellant the Right to Effective Assistance of
Counsel because it was sufficiently apparent for the Court that a conflict of
Interest Hearing should be ordered.

*Id*. The State responded, arguing that the petition was barred by the doctrine of *res judicata* and

his claims should be dismissed. (Ex. 17). On August 23, 2016, the trial court denied post-

conviction relief. (Ex. 18).

On September 21, 2016, Crosby, *pro s*e, filed a notice of appeal and the trial court

appointed counsel to represent him. (Ex. 19, Ex. 35, September 27, 2016 Docket entry).

Appointed counsel subsequently moved to withdraw from the case—stating that he could not

find meritorious issues for the appeal—and simultaneously filed a brief pursuant to *Anders v.*

*California,* 386 U.S. 738 (1967) setting forth potential assignments of error. (Ex. 20).

The state appellate court denied the motion and struck the brief, concluding that because

the appeal involved post-conviction relief, Crosby was not entitled to appointed counsel and

*Anders* did not apply. (Ex. 21). On June 5, 2017, Crosby, *pro se*, filed a brief raising the same

claims presented in his post-conviction petition. (Ex. 23). The State moved to strike Crosby's *pro*

*se* brief because he was still represented by counsel. (Ex. 25). The state appellate court ordered

Crosby's appointed counsel to file a complying motion to withdraw. (Ex. 26). Appointed counsel

complied and the state appellate court accepted Crosby's previously filed *pro se* brief. (Ex. 28,

29).

On October 30, 2017, the state appellate court concluded that Crosby's petition for post-

conviction relief was untimely and affirmed the trial court's judgment. (Ex. 30; *State v. Crosby*,

No. 16CA011019, 2017-Ohio-8349, at ¶¶8-11 (Ohio Ct. App. Oct. 30, 2017)).

On December 4, 2017, Crosby, *pro se*, appealed to the Ohio Supreme Court, asserting the same claims he previously raised in the trial and appellate courts. (Ex. 31, 32). On March 18, 2018, the Ohio Supreme Court declined to accept jurisdiction. (Ex. 34).

### D.    Federal Habeas Petition

On January 18, 2019, Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:

**GROUND 1:** Ineffective Assistance of Counsel.

*Supporting Facts:* I had a[n] attorney represent me then withdraw from my case so he could represent my co-defendant.

**GROUND 2:** The trial court denied the Defendant the right to effective assistance of counsel.

*Supporting Facts:* The trial court failed to hold a hearing concerning Attorney Bradley's conflict of interest when it knew that Bradley represented the defendant then represented his co-defendant.

**GROUND 3:** Ineffective assistance of trial counsel.

*Supporting Facts:* Counsel failed to interview the State witnesses.

(R. 1, Page ID # 5-8). Respondent filed a return of writ. (R. 10).

## III.    Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997); *Watkins v. Warden*, No. 17-1388, 2017 WL 4857576 at *1 (6th Cir. Sept. 28, 2017) ("Actions arising under § 2254 have a one-year statute of limitations.") The relevant provisions of AEDPA state:

(d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

### A.    One-Year Limitation After Conclusion of Direct Review

Respondent asserts that the habeas petition is time-barred because Crosby did not file within the AEDPA's one-year statute of limitations. (R. 10, PageID# 55-56). "[A] state prisoner ordinarily has one year to file a federal petition for habeas corpus, starting from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" *McQuiggin v. Perkins*, 569 U.S. 383, 388, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013) (*quoting* 28 U.S.C. § 2244(d)(1)A)). The one-year statute of limitations does not begin to run until all direct criminal appeals in the state system are concluded, followed

by either completion or denial of certiorari before the United States Supreme Court, or the expiration of the time allowed (90 days) for filing for certiorari. *Clay v. United States*, 537 U.S. 522, 528 n.3 (2003); *Anderson v. Litscher*, 281 F.3d 672, 675 (7th Cir. 2002); *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001), *cert. denied*, 534 U.S. 924 (2001) (citing cases).

Respondent asserts that Petitioner's conviction became final on January 28, 2016—forty-five days after the state appellate court denied his appeal. (R. 10, PageID# 55). The court agrees. The state appellate court affirmed Crosby's convictions on direct appeal on December 14, 2015. (Ex. 15). Therefore, his appeal to the Ohio Supreme Court was due "within forty-five days from the entry of the judgment being appealed," that is no later than January 28, 2016. *See* S.Ct. Prac. R. 6.01(A)(1). Furthermore, the one-year statute of limitations for Crosby to file his petition for a writ of habeas corpus began to run on January 29, 2016. 28 U.S.C. § 2244(d)(1)(A); *Bronaugh v. Ohio*, 235 F.3d 280, 284 (6th Cir. 2000). Petitioner was required to file his habeas petition no later than January 29, 2017.

Crosby, however, did not place his habeas petition in the prison mailing system until January 14, 2019. (R. 1, PageID# 15; *See Houston v. Lack*, 487 U.S. 266 (1988); *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). Therefore, under 28 U.S.C. § 2244(d)(1)(A), the petition is untimely by almost two years and should be dismissed, unless there are grounds for tolling or a credible claim of actual innocence.

### B. Statutory Tolling

Petitions filed more than one year after the conclusion of direct review are not always untimely. The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.'" *Evans v. Chavis*,

8

546 U.S. 189, 191, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006) (quoting 28 U.S.C. §2244(d)(2));

*Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). In addition, the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date, *see, e.g.*, 28 U.S.C. § 2244(d)(1)(D)—but Petitioner does not assert that the factual predicate of his claim entitles him to a later start date.

Respondent argues, based on the record in this case, that Crosby's state post-conviction petition did not toll the running of the statute of limitations because it was untimely. (R. 10, PageID# 55). Here, Crosby filed a motion for post-conviction relief in the state court on March 16, 2016, at which point 47 days had elapsed of the one-year statute of limitations. (Ex. 16). The trial court denied Crosby's motion. (Ex. 18). On October 30, 2017, the state appellate court affirmed the trial court's denial, concluding that Crosby's motion for post-conviction relief was untimely and the trial court lacked authority to consider the petition. (Ex. 30 at ¶ 10). Therefore, the state court rejected Crosby's motion as untimely. An untimely post-conviction or collateral motion is not considered properly filed for purposes of tolling the statute of limitations. *Allen v. Siebert*, 552 U.S. 3 (2007) (per curiam) (affirming *Pace v. DiGuglielmo*, 544 U.S. 408 (2005)); *Williams v. Wilson*, No. 03-4404, 2005 WL 2175914, at *3 (6th Cir. Aug. 9, 2005), *cert. denied*, 547 U.S. 1152 (2006).

Moreover, by the time of the state appellate court's October 30, 2017 denial, a total of 640 days had elapsed—none of which were statutorily tolled. Furthermore, even timely appeals

from an untimely post-conviction petition do not toll the statute of limitations. As explained by another decision of this court:

> [I]n *Pace*, the Supreme Court expressed reservations about the wisdom of tolling where a petition is untimely. 544 U.S. at 413 ("On petitioner's theory, a state prisoner could toll the statute of limitations at will simply by filing untimely state postconviction petitions. This would turn § 2244(d)(2) into a *de facto* extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay.") Similar concerns are applicable here. A petitioner should not enjoy the benefit of statutory tolling by promptly appealing from an otherwise improperly filed collateral petition. The *Pace* court, while not confronted with identical circumstances, held as follows: "[w]hat we intimated in *Saffold* we now hold: When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." 544 U.S. at 414 (citing *Carey v. Saffold*, 536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002)).
>
> This Court agrees with the *Lynch* decision and finds that the concerns of undue delay expressed by the Supreme Court preclude statutory tolling during the pendency of an appeal from an untimely post-conviction or collateral application. This Court recognizes that the outcome might be different if the appeal leads to a reversal of the lower court's decision and results in a finding that the application was "properly filed" under state law. Here, however, the Ohio Supreme Court dismissed the appeal. "Where the last reasoned order in a state court proceeding relies on a procedural error, later unexplained orders are presumed to rest on the same ground." *Palmer v. Lavigne*, 43 Fed. Appx. 827, 829 (6th Cir. 2002) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991).

*Parsons v. Turner*, No. 3:12-cv-02300, 2013 U.S. Dist. LEXIS 183368, at *11-13 (N.D. Ohio Nov. 19, 2013) (internal citation omitted), *adopted by* 2014 WL 197781 (N.D. Ohio Jan. 14, 2014) (Helmick, J.); *accord Davis v. Sloan*, No. 1:19 CV 1456, 2019 U.S. Dist. LEXIS 233146, at *23 (N.D. Ohio Nov. 7, 2019) (agreeing with the reasons stated in *Parsons*, and finding an appeal from an untimely post-conviction petition has no tolling effect).

Therefore, the court concludes that the habeas petition is untimely.

### C. Equitable Tolling

The court finds that equitable tolling is not appropriate. "The federal courts sparingly bestow equitable tolling. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.... Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000) (citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

The Sixth Circuit has rejected the notion that ignorance of the law alone, including the lack of knowledge concerning filing requirements warrants equitable tolling. "[T]is court has repeatedly held that 'ignorance of the law alone is not sufficient to warrant equitable tolling.'" *Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (*quoting Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *accord Taylor v. Palmer*, 623 Fed. App'x 783, 788 (6th Cir. 2015). Crosby has not provided any basis in his Petition for his failure to timely file nor did he file a Traverse in response to the Respondent's argument. (R. 1). Therefore, the court recommends dismissing the petition as time-barred.

### D. Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S. Ct. 1924, 1928, 185 L. Ed. 2d 1019 (2013), the United States Supreme Court held that actual innocence, if proved, may overcome the expiration of AEDPA's one-year statute of limitations. The Supreme Court noted that a claim

11

of actual innocence is *not a request for equitable tolling* but, rather, a request for an equitable exception to § 2244(d)(1). *Id.* at 1931 (emphasis added). The *McQuiggin* court also reiterated the requisite standard for a credible claim of actual innocence. *Id.* at 1931. The touchstone of the inquiry is whether a petitioner's "new evidence shows 'it is more likely than not that no reasonable juror would have convicted [him].'" *Id.* at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995)). However, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 133 S.Ct. at 1928. In such cases, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 298.

In the instant case, Petitioner does not present any argument regarding actual innocence, nor has he identified any new, reliable evidence demonstrative of actual innocence. Therefore, Petitioner has not shown a basis for the court to consider an actual innocence equitable exception to the AEDPA one-year statue of limitation.

## IV.    Conclusion

For the foregoing reasons, it is recommended that Petitioner's Petition for a Writ of Habeas Corpus be DISMISSED as time barred.

*s/ David A. Ruiz*
United States Magistrate Judge

Date: December 15, 2021

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).